IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JONATHAN LEWIS, | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-20-3408 |
| WARDEN and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

**MEMORANDUM OPINION**

Jonathan Lewis filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF 1. The respondents filed an answer to the petition, asserting it must be dismissed because the claims are either procedurally defaulted or lack merit. ECF 5. Lewis did not respond to an Order directing him to reply to the respondents' answer. ECF 6. No hearing is necessary. *See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*, Loc. R. 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the following reasons, the petition is dismissed and a certificate of appealability shall not issue.

### I. Background

On September 25, 2012, Lewis pled guilty to possession with the intent to distribute a controlled dangerous substance. ECF 5-1, at 23, 43–45. He was sentenced to 20 years' incarceration, with 12 years suspended, and three years' probation. *Id.* at 43–45. Lewis was released on probation on February 4, 2016. *Id.*

On July 15, 2017, Lewis was arrested on new drug offenses and charged with three counts of possession with intent to distribute a controlled dangerous substance and three counts

of possession. *Id.* at 5. Lewis also was charged with a violation of his probation from the 2012 conviction. *Id.* at 43–45. On September 10, 2018, Lewis pled guilty to one count of possession with intent to distribute heroin. ECF 5-2. Lewis entered an *Alford* plea on the condition that the state would recommend a sentence of 20 years' incarceration and Lewis would not receive any period of incarceration for the probation violation. *Id.* at 2–5; *see United States v. Mastrapa*, 509 F.3d 652, 659 (4th Cir. 2007) ("An *Alford* plea refers to a plea in which the defendant consents to a prison sentence even though 'he is unwilling or unable to admit his participation in the acts constituting the crime.'" (citing *North Carolina v. Alford*, 400 U.S. 25, 37 (1970))). The plea agreement did not bind the sentencing judge to impose a particular sentence, although it did require the judge not to impose a sentence for the probation violation, and it did not prohibit Lewis's counsel from arguing that he should receive a sentence less than 20 years. ECF 5-2, at 5–6.

At the plea and sentencing hearing, the prosecutor offered the following factual basis for the plea:

> If the case proceeded to trial, the evidence would show that on July 15, 2017, approximately 7:30 p.m., officers had set up a DUI sobriety check point on Nanticoke Road headed westbound in the area of Spry Laramore Road in the intersection of Nanticoke. It's about a mile before Boonies if Your Honor's familiar with the area of Boonies restaurant. One of the officers -- One of the officers made contact with a white passenger vehicle that approached. It was a driver and a passenger in it. The officer detected the odor of marijuana from within the vehicle and directed the vehicle on to the shoulder. The vehicle pulled over to the shoulder, however continued to move forward. Despite commands to stop, the vehicle failed to stop, led police on a high-speed chase reaching miles in excess of 90 miles an hour. One of the troopers at the check point was able to follow the vehicle and observed items being thrown out of both windows. The officer had the emergency equipment activated, was still attempting to stop the vehicle. The vehicle drove in a reckless manner. During the chase, another trooper coming from the opposite direction -- and I should say that the vehicle was headed westbound. Another officer headed eastbound was able to confront the vehicle head on. The vehicle came to a stop or at least slowed, and the passenger got out of the vehicle and ran into the woods. The driver of the vehicle

> then was able to maneuver around the head on police vehicle and continue accelerating and speed off.
>
> The officers were able to locate the vehicle and the driver further down the road at a beach in Tyaskin. That driver was identified as Tyrone Conway. Subsequently, Mr. Conway has met with the State, gave a proffer to his side of the story, which was that the drugs all belonged to the defendant. When they approached the sobriety check point, the defendant notified Mr. Conway of the existence of the drugs, and that prompted Mr. Conway to take off driving fast. Shortly after the passenger ran away from the vehicle into the woods, another trooper was able to locate him on a dirt road not far from the Boonies Restaurant intersection walking away from the main roads. That person was identified as the defendant who would be identified as the individual seated next to defense counsel at trial table, Mr. Lewis. On Mr. Lewis, the police found $321 in cash including fifteen $20 bills, four $5 bills, and a one-dollar bill. Both Mr. Conway and Mr. Lewis were arrested. During transport, Mr. Lewis stated to the trooper that was transporting him, T. Conway was driving the car. The other troopers returned to the area where items were seen thrown out of the vehicle, and they recovered three different controlled dangerous substances.
>
> I'd ask the Court to consider -- or for the purpose of the statement of facts the lab report and the photo that had already been admitted. They show that -- excuse me -- let me back up. These items were then collected and sent off to the Maryland State Police forensics laboratory for testing. They tested positive for heroin, cocaine, and marijuana. Most if not all of the items appear to be packaged for sale. No evidence of use, personal use or paraphernalia, at least for the cocaine or the heroin were found at any point during the investigation. There would be testimony that the packaging and cash found on the defendant and the weights of the individually packaged items would be consistent with distribution. I have a stipulation here that I have had marked that Trooper Frock would be found as an expert in distribution investigations and the testimony of the forensic expert would meet all of the necessary requirements for admitting the lab report into evidence.

ECF 5-2, at 40–43.

The trial court sentenced Lewis to 20 years' incarceration on the drug charge and found him guilty of violating his probation but did not impose any additional period of incarceration for the probation violation. *Id.* at 49.

On December 17, 2018, Lewis filed a *pro se* petition for postconviction relief, arguing that his trial counsel was ineffective for failing to timely file a motion for modification of

3

sentence. ECF 5-1, at 67–71. Lewis sought and received a voluntary dismissal of the petition without prejudice on January 14, 2019. *Id.* at 9. He refiled a *pro se* postconviction petition on the same grounds on February 11, 2019. *Id.* at 72–75. Counsel for Lewis filed a supplemental petition on January 25, 2020, asserting two additional claims of ineffective assistance of trial counsel in connection with the guilty plea. *Id.* at 76–87. First, Lewis alleged that counsel was ineffective for failing to adequately present mitigating evidence at the plea hearing. *Id.* at 77, 79–84. Second, Lewis alleged that his counsel failed to conduct a full investigation of the circumstances surrounding his plea, including not communicating to Lewis the conversations trial counsel had with his probation violation counsel and not communicating to Lewis the fact that the witness against him, Tyrone Conway, was not served. *Id.* at 77, 84–85. The postconviction court held a hearing on February 14, 2020 (ECF 5-3) and issued an opinion on June 4, 2020, denying Lewis's claims. ECF 5-1, at 134–41.

On June 30, 2020, Lewis filed an application for leave to appeal the denial of his postconviction petition. *Id.* at 142–55. The Appellate Court of Maryland denied the application for leave on November 2, 2020. *Id.* at 156–57.

Lewis filed his petition for writ of habeas corpus in this Court on November 18, 2020. ECF 1. Lewis alleges two claims for relief: (1) his trial counsel was ineffective for failing to adequately present mitigating evidence at his sentencing hearing; and (2) his trial counsel was ineffective for failing to adequately investigate and communicate the circumstances surrounding his plea. As to the latter claim, Lewis alleges that his counsel failed to inform him that the charge of possession with the intent to distribute heroin lacked probable cause, failed to investigate the circumstances of the plea agreement between the state and Tyrone Conway, who

4

was prepared to testify against Lewis, and failed to advise him that Conway had not been served to appear at his trial. ECF 1, at 4.

## II. Procedural Default

Procedural default occurs when the petitioner failed to present the claim to the highest state court with jurisdiction to hear it, and the state courts now would find that the petitioner cannot assert that claim due to a procedural bar. *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted."). As the U.S. Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in postconviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301. To exhaust a claim through postconviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md.

Code Ann., Crim. Proc. §§ 7-101–7-103.  After a decision on a postconviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland.  *Id.* § 7-109.  If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted.  Cts. & Jud. Proc. § 12-202.  Maryland law does not permit a second and successive state petition for postconviction relief.  *See* Crim. Proc. § 7-103(a).

The respondents contend that Lewis's claim that his trial counsel failed to inform him that the possession with intent to distribute heroin charge lacked probable cause is procedurally defaulted because Lewis never raised it in the Maryland state courts.  ECF 5, at 25–28.  The Court agrees.  Lewis did not file a direct appeal, and his postconviction petition did not include this claim.  ECF 5-1, at 76–87.  Nor did Lewis include this claim in his application for leave to appeal the denial of his postconviction petition.  *Id.* at 153–54.  Accordingly, Lewis's claim that his trial counsel was ineffective for failing to inform him that one of the charges against him lacked probable cause is procedurally defaulted.[1]  *See Pevia v. Bishop*, Civ. No. ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims.").

### III.   Standard of Review

A state prisoner's application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Section 2254 sets forth a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*,

---

[1] Lewis did not respond to the respondents' procedural default argument when directed to so by the Court.  ECF 6.  Thus, Lewis has not offered any grounds upon which the Court may excuse the default.

6

521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet" and requires reviewing courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v. Woodall*, 572 U.S. 415, 419–20 (2014) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement") (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state's adjudication is contrary to clearly established federal law under § 2254(d)(1) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. (quoting *Williams*, 529 U.S. at 410) (emphasis removed). "[A] federal habeas court may not issue the writ

7

simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–342 (2006)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

### IV. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To mount a successful challenge based on an ineffective assistance of counsel claim, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that

counsel's performance was deficient. *Id*. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "highly deferential" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (quoting *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel

must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to postconviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In the context of a guilty plea, the performance standard remains the same, but for the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This inquiry should be conducted "objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695). Thus, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both

components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### A. Claim One

In Claim One, Lewis contends that his trial counsel presented an inadequate mitigation case at his sentencing hearing. Lewis has a constitutional right to the effective assistance of counsel at sentencing, a critical stage of the criminal proceedings. *Mempa v. Rhay*, 389 U.S. 128, 137 (1967); *Gardner v. Florida*, 430 U.S. 349, 358 (1977). In *Mempa*, the Supreme Court stated that "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." 389 U.S. at 135.

Lewis litigated this claim before the postconviction court at an evidentiary hearing. At the hearing, social worker Rhonda Gaines testified on his behalf. ECF 5-3, at 35–49. She evaluated Lewis and determined that he grew up in poverty and surrounded by violent crime, began drinking alcohol regularly around 12 to 14 years old, had a father who used crack cocaine, and cared for a sister with a terminal illness. *Id.* at 38–40. Gaines also testified that Lewis had a significant history of drug use, including alcohol, pain pills, heroin, MDMA, and marijuana. *Id.* at 40. Lewis's trial counsel, Jan-Paul Lukas, testified that he and Lewis discussed the possibility of raising Lewis's prior drug use at the sentencing hearing. *Id.* at 55. It was Lukas's assessment that raising Lewis's history of drug abuse as sentencing mitigation would be inappropriate because Lewis maintained his innocence on the drug charge by entering an *Alford* plea. *Id.* at 56–57.

After considering the evidence, the postconviction court denied Lewis's claim that his counsel at sentencing was ineffective. The court stated:

>Petitioner claims that Trial Counsel failed to present readily available mitigation evidence at sentencing and because of such "there is a reasonable probability that had trial counsel conducted investigation and presented available mitigating information the Court would have imposed a different sentence."  The argument Petitioner makes is that had Trial Counsel provided the court with more information regarding Petitioner's personal life and substance abuse history, as well as a plea agreement that existed between a co-Defendant and the State, the sentence Petitioner received would have been different.  Petitioner, in his Supplemental Petition and at the Postconviction Hearing, states that if the Court had heard about how he had grown up in a "violent and occasionally terrifying environment . . . including witnessing a murder in front of his home," the Court would have understood the emotional and physical toll that he had to endure while growing up.  Petitioner focuses on the fact that during sentencing, Trial Counsel focused mainly on the involvement in the case between the co-Defendants and Petitioner.  Petitioner argues that this was ineffective assistance of counsel because at the time of sentencing, Petitioner had already entered an Alford plea with the State and as such, trying to minimize Petitioner's minimal involvement was not as important as focusing on who Petitioner was as a person . . . .
>
>During the postconviction hearing, Trial Counsel testified that he made a strategic decision in mitigation to stress Petitioner's lack of involvement in the drug case.  Coupled with the fact that Petitioner was entering an Alford plea, Trial Counsel sought to minimize Petitioner's involvement to mitigate any sentence.  Petitioner was also given several opportunities to explain to the Court what he thought Trial Counsel had failed to present to the Court in mitigation.  Trial Counsel made a tactical decision to present the evidence and arguments that he felt would best mitigate Petitioner's sentence.  Petitioner has not established that his performance was deficient.  Furthermore, there is nothing in the record, nor in Petitioner's argument, that shows that had the additional information been provided there exists a substantial possibility that the sentence the Court handed down would have been different.  Petitioner took the benefit of the plea, in which the Court sentenced according to the State's recommendation.  Petitioner has not shown a substantial possibility that the outcome would have been different had Trial Counsel provided the additional information.  For the following reasons, this allegation of error is DENIED.

ECF 5-1, at 138–40 (internal citations omitted).

The postconviction court's conclusion that Lewis was not denied effective assistance of counsel at sentencing is not contrary to or an unreasonable application of federal law.  Lewis has not established that his trial counsel's performance was deficient.  The decision not to highlight Lewis's prior use of the same drugs he was charged with (heroin, crack cocaine, and marijuana)

when Lewis maintained his innocence to the drug charges was well within the wide range of strategic decisions that the Court will not second-guess. As for any other evidence counsel allegedly failed to present, Lewis did not prove before the postconviction court, and has not proven here, a reasonable likelihood it would have resulted in a different sentence. At the sentencing hearing, the trial judge said he was imposing a 20-year sentence on the drug charges because, per the plea agreement, Lewis would not receive a sentence for the probation violation. ECF 5-2, at 49.

The state postconviction court's dismissal of Claim One was not contrary to or an unreasonable application of federal law. Lewis is not entitled to relief on Claim One. It is dismissed.

### B. Claim Two

In Claim Two, Lewis contends that his trial counsel failed to adequately investigate the circumstances surrounding his plea. Specifically, Lewis alleges that his counsel did not tell him about counsel's communications with his probation violation counsel, did not investigate the circumstances of the plea agreement accepted by Tyrone Conway, and did not inform him that Conway had not been served with a subpoena to appear for his trial. The postconviction court dismissed the claim, concluding:

> Trial Counsel's presentation at the postconviction hearing indicates that he communicated with Petitioner on several occasions including going over the benefits of taking a plea. Trial Counsel also testified that he was prepared to go to trial on the day Petitioner entered into the plea agreement. Further, Trial Counsel testified that at no point during the plea litany did Petitioner voice any concern or questions regarding the agreement he was entering, nor did Petitioner voice that he needed more time to contemplate the offer. Nothing testified to nor shown in the record indicates that there was a deficient act that prejudiced Petitioner. For the following reasons, this allegation of error is DENIED.

ECF 5-1, at 141.

The postconviction court's conclusion that counsel was not ineffective is not contrary to or an unreasonable application of federal law. Lewis did not show below, and has not shown here, that it would have been objectively rational for him to have rejected the plea deal if his counsel had not erred. Lewis was facing a maximum sentence exposure of 57 years' imprisonment if he had been convicted at trial. ECF 5-3, at 61. Lewis testified at the postconviction hearing that he understood his options were to take the plea and receive 20 years or reject the plea and risk up to 60 years in prison, and he said that he would "rather take his chances" with the 20-year deal. *Id.* at 19. When Lewis entered the guilty plea, Conway was at the courthouse, prepared to testify against him. ECF 5-3, at 60–61. Lewis has not shown that, but for his trial counsel's errors, rejecting the plea would have been rational under the circumstances.

The state court's rejection of Claim Two is neither contrary to nor an unreasonable application of federal law. Lewis is not entitled to relief on Claim Two. It is dismissed.

## V.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, a certificate of appealability must be issued before an appeal can proceed. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied

on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Lewis has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

A separate order dismissing the petition and denying a certificate of appealability follows.

 March 8, 2024
Date

Deborah L. Boardman
United States District Judge